1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   QUANTUM CAPITAL FUNDING               No.  2:18-cv-03279-WBS-KJN PS
     CORPORATION,
12                                         ORDER & FINDINGS AND
                    Plaintiff,             RECOMMENDATIONS
13
           v.                              (ECF Nos. 54, 57)
14
     PDI GROUP, INC., et al.,
15
                    Defendants.
16

17        In January 2022, the court granted in part plaintiff's motion for default judgment—

18   holding various defendants liable for each cause of action except the Fifth and Sixth Causes of

19   Action—and denied the motion without prejudice with respect to damages, in order for plaintiff

20   to address certain damages and prejudgment interest issues identified by the undersigned.  (ECF

21   No. 52; see ECF No. 51 at 28.)  Now before the court are plaintiff's motion to voluntarily dismiss

22   its Fifth and Sixth Causes of Action (ECF No. 57) and its renewed motion for default judgment as

23   to damages, which also contains a request for attorney's fees and costs (ECF No. 54).  The

24   motions were taken under submission, and defendants did not file an opposition to either motion.

25   (ECF Nos. 55, 58.)  For the following reasons, the court recommends that both motions be

26   GRANTED.  The court further recommends dismissing without prejudice all cross claims

27   asserted between the now-defaulted defendants, for failure to prosecute, in order to bring this case

28   to a close.

                                            1

1 **I.      BACKGROUND**

2        The complete factual and procedural history of this case was set forth in the

3 undersigned's December 7, 2021 findings and recommendations.  (ECF No. 51.)  The court

4 provides here only the information relevant to the instant motions.  This case is essentially a

5 breach of contract action against four interrelated defendants who failed to re-pay plaintiff for the

6 working capital "funding" it provided them in the form of purchasing various sets of accounts

7 receivable from the corporate defendants between October 2016 and February 2017.

8        As alleged in the complaint, and now established by the previous grant of default

9 judgment as to liability, the two corporate defendants, PDI Group, Inc. ("PDI") and RG Group,

10 LLC ("RG Group") are or were Missouri companies, and the two individual defendants John

11 Gehm Jr. and John Gehm III together owned PDI.  (ECF No. 1 ("Complaint") ¶¶ 2-5.)  PDI was

12 administratively dissolved in September 2018.  (Id. ¶ 27.)  No ownership interests were alleged as

13 to RG Group, but Gehm III signed the contracts at issue on behalf of RG Group; and these two

14 defendants were jointly represented by the same counsel in this action.  (Id. ¶ 14; see ECF No. 18,

15 Answer and Cross Claim.)

16        As clarified in the present moving papers, plaintiff agreed to purchase from PDI and RG

17 Group numerous accounts receivable, under a series of eight individual Offers to Sell/Agreements

18 ("the Purchase Agreements"):  three with PDI and five with RG Group.[1]  (Complaint ¶ 17; ECF

19 No. 54.2 ("Johnson Aff.") ¶ 9 & Exs. D through K.)  Those Purchase Agreements were governed

20 by an umbrella agreement entitled Terms and Conditions for Purchasing Accounts Receivable

21 ("Terms and Conditions"), which outlined the parties' obligations, warranties, and remedies for

22 default.  (Johnson Aff. ¶¶ 5, 8, Ex. A.)  Further, defendant Gehm III executed a Personal

23 Guaranty, personally guaranteeing the performance of PDI under the Terms and Conditions; and

24 defendant RG Group (through Gehm III) executed a Corporate Guaranty likewise guaranteeing

25 PDI's performance under the Terms and Conditions.  (Id. ¶¶ 6-7, Exs. B & C.)

26

27 [1] One of the Purchase Agreements refers to both PDI and RG Group, but the affidavit of Barry
Johnson (plaintiff's owner) confirms that this Purchase Agreement was for the purchase of
28 accounts receivable from RG Group only.  (Johnson Aff. ¶ 9 & n.3 & Ex. E.)

As found in the findings and recommendations on the previous motion for default judgment, both PDI and RG Group breached their contracts by (among other things) failing to ensure that plaintiff received payment on all purchased accounts receivable together with verbally agreed-to daily "factoring fees" (discussed further below).  (ECF No. 51 at 9-12.)  However, the court could not find all four defendants uniformly (that is, jointly and severally) liable for these breaches as plaintiff's motion proposed.  First, the court determined that liability needed to be allocated to each corporate defendant as independent sellers of separate accounts receivable under their individual Purchase Agreements entered.  (Id. at 12.)  Then, the court found that based on the Personal Guaranty and Corporate Guaranty, Gehm III and RG Group were liable for PDI's breaches—as was Gehm Jr., by virtue of being a shareholder of the now-dissolved company.  (Id. at 11.)  However, RG Group alone was liable for its own breaches because none of the other defendants guaranteed RG Group's performance, and there was no other basis for holding the other defendants liable, even assuming Gehm III and Gehm Jr. were owners of RG Group.  (Id. at 12-13.)  Therefore, the undersigned recommended denying default judgment as to damages in part because plaintiff's original motion did not segregate the damages arising from PDI's breaches versus the damages arising from RG Group's.  (Id. at 23.)

Overall, the undersigned found that plaintiff adequately pleaded five of its seven causes of action and that default judgment should be entered on each of those claims as to liability only.  (Id. at 10-19, 28-29.)  The undersigned recommended denying default judgment altogether as to the Fifth and Sixth Causes of Action—which asserted intentional and negligent misrepresentation by Gehm III only—for failure to adequately plead the elements of those claims.  (Id. at 16-18, 29.)  The undersigned invited plaintiff to clarify the amount and allocation of damages (and address other noted issues) in objections to the findings and recommendations or in a separate renewed motion for default judgment as to damages.  (Id. at 25, 28.)  With no objections filed, the assigned district judge adopted in full the undersigned's findings and recommendations.  (ECF No. 52.)

Plaintiff now moves to voluntarily dismiss the Fifth and Sixth Causes of Action under Rule 41(a)(2) in order to allow this action to be concluded.  (ECF No. 57.)  Plaintiff also brings

3

1    its anticipated renewed motion for default judgment as to damages, which includes a request for

2    attorney's fees and costs.  (ECF No. 54.)  The undersigned recommends granting both motions, in

3    addition to handling the administrative matter of dismissing cross claims filed between the two

4    pairs of defendants in order to enter final judgment and close this case.

5    **II.**    **<u>DISCUSSION</u>**

6       **A. Motion for Voluntary Partial Dismissal**

7         At the court's prompting, plaintiff moves to voluntarily dismiss without prejudice the

8    Fifth and Sixth Causes of Action in the complaint—given that the court found them insufficiently

9    pled for purposes of obtaining default judgment.  (ECF No. 57; <u>see</u> ECF No. 53.)

10         Notably, early in this litigation, defendants Gehm III and RG Group briefly appeared

11    (through counsel, who has since withdrawn) and filed an Answer to the complaint and a Cross

12    Claim against Gehm Jr. and PDI.  (ECF No. 18.)   Gehm III and RG Group later disappeared from

13    the litigation, and the court granted plaintiff's ex parte request to have their Answer set aside so

14    that default judgment could be pursued.  (ECF Nos. 43, 44.)  (The other two defendants, Gehm Jr.

15    and PDI, never appeared in the action at all.)

16         Although their Answer was set aside, the fact that Gehm III and RG Group filed an

17    Answer appears to preclude plaintiff from simply deciding to dismiss the Fifth and Sixth Causes

18    of Action and notifying the court accordingly.  <u>See</u> Fed. R. Civ. P. 41(a)(1)(A)(i) (permitting

19    unilateral dismissal without court order "before the opposing party serves either an answer or a

20    motion for summary judgment").  That left plaintiff with two options to secure the dismissal of

21    these causes of action to allow for entry of final judgment:  either (A) file a stipulation of

22    dismissal "signed by all parties who have appeared" (i.e., plaintiff, Gehm III, and RG Group)

23    under Rule 41(a)(1)(A)(ii), or (B) file a motion for dismissal of those claims under Rule 41(a)(2).

24    Understandably, given the disappearance of Gehm III and RG Group, plaintiff opted for the latter.

25    (ECF No. 57.)

26         A district court has broad discretion to grant a motion for voluntary dismissal under

27    Rule 41(a)(2).  <u>Hamilton v. Firestone Tire & Rubber Co. Inc.</u>, 679 F.2d 143, 145 (9th Cir. 1982).

28    The court should do so "unless a defendant can show that it will suffer some plain legal prejudice

4

1  as a result." <u>Smith v. Lenches</u>, 263 F.3d 972, 975 (9th Cir. 2001).

2         None of the defendants responded to this motion, and the court cannot see how any

3  defendant would be prejudiced by the dismissal of these claims.  The Fifth and Sixth Causes of

4  Action assert intentional and negligent misrepresentation claims against defendant Gehm III

5  alone. (ECF No. 1 at 11-12.)  As there is no counterclaim against plaintiff in this action,

6  dismissing these misrepresentation claims merely eliminates one of the grounds for defendants'

7  liability.  This equally benefits Gehm III as well as the cross-defendants from whom Gehm III

8  might have sought indemnity or contribution.  (As discussed next, the undersigned also

9  recommends dismissing those cross claims.)  Therefore, the court cannot identify any "prejudice

10  to some legal interest, some legal claim, some legal argument" that any defendant will suffer as a

11  result of this limited dismissal.  <u>See</u> <u>Smith</u>, 263 F.3d at 976.  The undersigned thus recommends

12  dismissing the Fifth and Sixth Causes of Action from the complaint in their entirety, without

13  prejudice.  (<u>See</u> ECF No. 57 at 3, requesting dismissal without prejudice, which is the default

14  form of dismissal under Rule 41(a)(2).)

15         **B.  Dismissal of Cross Claims for Failure to Prosecute**

16         One other related housekeeping item must also be addressed in order to enter final

17  judgment for this case.  As just noted, Gehm III and RG Group's answer to the complaint also

18  contained a Cross Claim against co-defendants Gehm Jr. and PDI.  (ECF No. 18 at 9-11.)

19  Gehm III and RG Group asserted two cross claims against their co-defendants:  one for

20  contribution and one for indemnity.  (<u>Id.</u>)

21         In December 2020, the undersigned set aside the answer, after learning at the

22  November 12, 2020 status conference that these defendants had ceased communicating with

23  plaintiff and plaintiff's counsel since their defense counsel withdrew in April 2020.  (ECF

24  Nos. 43, 44; <u>see</u> ECF No. 51 at 6.)  The order setting aside the answer made no mention of setting

25  aside or otherwise resolving the cross claims, however.

26         In an abundance of caution, therefore, the undersigned now recommends dismissing both

27  cross claims for failure to prosecute.  <u>See</u> Fed. R. Civ. P. 41(b).  The docket reflects no further

28  activity on the cross claims since they were first filed almost three years ago in August 2019; and

it is clear that Gehm III and RG Group have since abandoned this litigation.  <u>Should these</u> <u>defendants wish to object to the with-prejudice dismissal of these cross claims, they may do so</u> <u>within the period for objections to these findings and recommendations.</u>  In the absence of such objections, the undersigned recommends dismissing the cross claims with prejudice as a sanction for failing to pursue those claims after their filing.

### C. Motion for Default Judgment as to Damages

The court turns now to the main task at hand:  determining the terms of the judgment to be entered, now that the court has entered its liability ruling and plaintiff has provided the further damages proof required.  "A default judgment," unlike other types of final judgment, "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default."  <u>Philip Morris USA, Inc. v. Castworld Prod., Inc.</u>, 219 F.R.D. 494, 501 (C.D. Cal. 2003).  Thus, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint," and in the motion for default judgment the plaintiff must then "'prove up' the amount of damages that it is claiming."  <u>Id.</u> at 499, 501; <u>see</u> <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam) (party's default does not establish the amount of damages).  "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing."  <u>Id.</u> at 498 (citing Fed. R. Civ. P. 55(b)(2)).  It is appropriate to enter default judgment for money without a hearing when "the amount claimed is a liquidated sum or capable of mathematical calculation."  <u>Davis v.</u> <u>Fendler</u>, 650 F.2d 1154, 1161 (9th Cir. 1981).

In this renewed motion for default judgment, plaintiff attempts to "prove up" the damages and prejudgment interest requested—in response to the previously noted deficiencies—and also requests attorney's fees and costs.  In support of the damages and interest claimed, plaintiff provides a detailed affidavit of Barry Johnson, its sole owner and director, along with supporting exhibits many of which were also attached to the complaint.  (ECF No. 54.2 ("Johnson Aff.").)

///

///

6

1        1. <u>Compensatory Damages</u>

2        For purposes of assessing the extent of damages to be awarded, the court focuses solely on

3    the breach of contract cause of action, which provides the basis for the greatest amount of

4    damages requested and subsumes the same damages requested for the other four remaining causes

5    of action.  (<u>See</u> ECF No. 54.1 at 9-17, calculating damages for breach of contract cause of action;

6    ECF No. 54.4, requesting final judgment in those amounts.)

7        As compensation for PDI and RG Group's breaches of contract, plaintiff seeks damages

8    consisting of (a) repaying the original "funded amount" it paid for the accounts receivable, and

9    (b) daily "factoring fees" that accrued from the date of each Purchase Agreement's signing.  (ECF

10   No. 54.1 at 10-14.)  Mr. Johnson explains that in entering the subject Purchase Agreements the

11   parties also "verbally agreed that Plaintiff would be paid a daily fee of 0.001955% of the face

12   value of the purchased invoices (i.e., the gross amount of the invoice), accruing from the date

13   Plaintiff funded the agreed upon amounts and continuing until said funded amounts were re-

14   paid." (Johnson Aff. ¶ 12.)  The complaint similarly alleges that, "if any default occurs, PDI

15   and/or RG [Group], as the case may be, shall purchase the gross amount of each and every

16   receivable and pay certain daily fees, which is calculated at an agreed rate of 0.00196%[2] of the

17   outstanding gross accounts receivable."  (Complaint ¶ 20.)

18       This fee is known as a "factoring fee" in the industry, and the parties agreed that this daily

19   fee was reasonable given plaintiff's "delivery of working capital" in exchange for accounts

20   receivable that might or might not be paid by defendants' customers.[3]  (<u>Id.</u> ¶ 12.)  Because this

21   factoring fee agreement does not appear on the face of any of the written contracts, and because it

22   was unclear exactly how the factoring fees were orally agreed to operate, the court declined to

23   _____

24   [2] As shown in the present motion, the difference in the alleged percentage is due to rounding.  In fact, the agreed rate was the slightly lower 0.001955%.  (Johnson Aff. ¶ 13 n.4.)

25   [3] "'Factoring' means an accounts receivable purchase transaction that includes an agreement to
26   purchase, transfer, or sell a legally enforceable claim for payment held by a recipient for goods the recipient has supplied or services the recipient has rendered that have been ordered but for
27   which payment has not yet been made."  Cal. Fin. Code § 22800(i).  The factoring fees resemble interest that would accrue on a loan, but a "contract for factoring or purchasing receivables is
28   [not] per se a loan."  <u>Refinance Corp. v. N. Lumber Sales, Inc.</u>, 163 Cal. App. 2d 73, 78 (1958).

1    issue an award of damages without further proof and explanation of the factoring arrangement.

2        The present renewed motion clarifies that the factoring fees were agreed to accrue daily

3    from the date of the signing/funding of the various Purchase Agreements, regardless of whether

4    or not defendants were in default.  (Johnson Aff. ¶¶ 12, 16 n.5.)  As proof that there was mutual

5    assent to the 0.001955% factoring rate, plaintiff provides evidence that this arrangement was part

6    of the parties' usual course of dealing.  Plaintiff provides copies of Purchase Orders for plaintiff's

7    purchases of other accounts receivable from defendants prior to and contemporaneous with its

8    purchase of the accounts receivable that are the subject this litigation.  (Johnson Aff. ¶ 13,

9    Ex. M.)  These Purchase Orders incorporated the same Terms and Conditions as the subject

10   Purchase Agreements.  (Johnson Aff. ¶ 13.)  Plaintiff also provides corresponding Rebate

11   Statements that were given to defendants upon the customers' full payment to plaintiff of the

12   funded amounts plus factoring fees owed on these Purchase Orders.[4]  (Johnson Aff. ¶ 13, Ex. L.)

13   Mr. Johnson's affidavit explains that these Rebate Statements reflect a formula wherein their

14   listed "Fee" amount is calculated by multiplying the face value of the purchased receivables by

15   "0.001955%" and then multiplying that product by the number of "Days Out," meaning the

16   "number of days between when Plaintiff funded the agreed upon amount and when Plaintiff

17   received payment in full."  (Johnson Aff. ¶ 13, discussing example Rebate Statement at ECF

18   No. 54.2 at 44.)

19       A quick interlude to address plaintiff's use of the "%" symbol is necessary here.

20   Throughout the complaint and the briefing of its motions for default judgment, plaintiff refers to

21   the factoring fee as a percentage:  either "0.00196%" (Complaint ¶ 20) or "0.001955%" (e.g.,

22   Johnson Aff. ¶ 12).  Based on plaintiff's actual calculations of damages (both in the complaint

23   and in this motion), this appears to be a mistake.  To calculate a percentage of a number, one must

24   move the decimal two places to the left of where it sits when listed as a percentage (to account for

25   the "per centum"/per hundred that the symbol signifies).  If the "0.001955%" recited throughout

26

27   _____

     [4] There are no similar rebate statements for any of the accounts receivable at issue in this action
28   because rebate statements are only provided after plaintiff receives payment in full.  (Johnson
     Aff. ¶ 13.)

the briefing and Mr. Johnson's affidavit were indeed what the parties orally agreed to, the proper multiplier to use in the factoring formula would be 0.00001955. However, the surrounding pleadings and the evidence of the formula reflected in the Rebate Statements satisfies the court that the parties in fact agreed that factoring fees would accrue at a rate of 0.001955 <u>times</u> the outstanding face value of the accounts receivable—which is to say, at a rate of 0.1955 <u>percent</u> of the outstanding face value.

First, despite alleging that the agreed rate was "0.00196%," plaintiff elsewhere (including in the same paragraph) alleges that as of the date of the filing of the complaint, the total factoring fees accrued for all eight Purchase Agreements was $593,138.71, and that daily fees were continuing to accrue at a rate of $748.48. (Complaint ¶¶ 20, 22, 33.) In the prior motion for default judgment plaintiff acknowledged that this rate was slightly off, and that the combined daily accrual rate is actually $747.83. (ECF No. 49.2 ¶ 18 n.4.) The $747.83 daily accrual rate was reached by multiplying the combined outstanding face value of the accounts receivable ($404,002.64 - $22,458.66 = $381,543.98) by 0.00196—not by 0.0000196.

In addition, the undersigned independently confirmed that the Rebate Statements uniformly reflect that the factoring rate actually applied to the corresponding Purchase Orders (for the comparator accounts receivable not at issue in this suit) were calculated by multiplying the face value of the receivables by 0.0019552—not by 0.000019552. (See Johnson Aff. ¶ 13 & Ex. L.) Thus, the undersigned is convinced that the use of the "%" sign is simply a mistake, and the factoring fees should be calculated at a daily accrual rate of 0.001955 times the outstanding face value of the accounts receivable.

Defendants never disputed the daily fees reflected in the Rebate Statements. (Johnson Aff. ¶ 13.) Therefore, based on Mr. Johnson's affidavit, the common usage of factoring fees in the industry, and the evidence of the parties' dealings in contemporaneous accounts receivable transactions, the court is satisfied that factoring fees were built into the Purchase Agreements and that 0.001955 is the factoring multiplier to be used in calculating the present damages.

///

///

9

1

*a. Damages from PDI's Accounts Receivable*

2      In response to the issues raised in the prior findings and recommendations, plaintiff's

3 renewed motion helpfully allocates which portions of the unpaid funded amounts and factoring

4 fees arise from each of the corporate defendants' separate transactions with plaintiff.

5      Damages on PDI's receivables are the easier of the two sets to calculate because plaintiff

6 received no payment of any kind in fulfillment of the accounts receivable purchased from PDI.

7 PDI executed three Purchase Agreements to sell accounts receivable to plaintiff, contained in

8 Exhibits F, G, and H to the Johnson Affidavit.  The gross amount ("face value") of the covered

9 accounts receivable were respectively $65,500 (Ex. F), $69,500 (Ex. G), and $29,250 (Ex. H), for

10 a total face value of $164,250.  (Johnson Aff. ¶¶ 9, 11.)  Plaintiff "funded" these accounts

11 receivable respectively for $52,400 (Ex. F), $55,600 (Ex. G), and $23,400 (Ex. H), for a total

12 "funded amount" of **$131,400**.  (Id. ¶¶ 10-11.)

13      Plaintiff was to be repaid this funded amount, together with the daily factoring fees.  (Id.

14 ¶ 12.)  The amount of the factoring fees is based on the number of days from the funding of the

15 accounts receivable until the day plaintiff is paid in full—which has not yet occurred.  All of the

16 Purchase Agreements between plaintiff and PDI were signed/funded on the same date

17 (October 27, 2016); and plaintiff seeks damages only through the date of Mr. Johnson's latest

18 affidavit, April 14, 2022 (see ECF No. 54.1 at 14, calculating damages as of date of Johnson

19 Affidavit; ECF No. 54.4, proposing flat dollar amounts of compensatory damages, not a

20 continuing rate).

21      Plaintiff wisely splits the factoring fees calculation into two time periods:  (A) the 793

22 days between the October 27, 2016 funding and the December 28, 2018 filing of the instant

23 complaint, and (B) the 1203 days between the filing of the complaint and the date of Mr.

24 Johnson's latest affidavit, April 14, 2022.  (ECF No. 54.1 at 12-14.)  Determining the fees owed

25 at the time of the complaint's filing is important for determining the amount of prejudgment

26 interest owed (as discussed in the next subsection).

27      As of the date of the complaint's filing, the total fees amassed due to lack of payment on

28 PDI's receivables was $254,639.23.  Plaintiff correctly calculates this amount by multiplying

10

$164,250 (total outstanding face value of receivables purchased) x 0.001955 (daily factoring rate) x 793 (days from funding to filing of complaint).

These fees from PDI's outstanding receivables then continued to accrue at a rate of $321.11 per day ($164,250 x 0.001955, with rounding to the nearest cent). Accordingly, from the date of the complaint's filing to the date of Mr. Johnson's affidavit, the additional fees due to lack of payment on PDI's receivables totaled $386,295.33 ($321.11 per day x 1203 days).

Thus, the total fees amassed (over both periods) due to lack of payment on PDI's receivables as of the filing of Mr. Johnson's affidavit is $640,934.56 ($254,639.23 pre-complaint + $386,295.33 post-complaint).

The total damages incurred for PDI's breaches of contract, therefore is **$772,334.56** ($640,934.56 in factoring fees + the original $131,400 funded amount). The court should enter judgment in that amount of damages against all four defendants, jointly and severally, given the court's previous judgment that all four defendants are liable for PDI's breach of contract. As explained after the following analysis of all damages and interest requested, the amounts to be awarded do not exceed the amounts demanded in the complaint. See Fed. R. Civ. P. 54(c); Philip Morris USA, 219 F.R.D. at 501.

*b.  Damages from RG Group's Accounts Receivable*

Damages on RG Group's receivables are more complex because in February and November of 2017, plaintiff received two payments on one of the RG Group accounts receivable for a total of $22,458.66 in repayment. (Johnson Aff. ¶ 14.) As discussed below, this both reduces RG Group's debt to repay the total funded amount for its receivables and reduces the factoring fees accruing on the account that was paid down.

RG Group executed five Purchase Agreements with plaintiff, contained in Exhibits D, E, I, J, and K to the Johnson Affidavit. Adding further computational difficulty, each of these Purchase Agreements were signed/funded on different dates. The gross amount ("face value") of the covered accounts receivable were $24,582.64 (Ex. D), $64,780 (Ex. E), $65,415 (Ex. I), $32,525 (Ex. J), and $52,450 (Ex. K), for a total face value of $239,752.64. (Johnson Aff. ¶¶ 9-10.) Plaintiff funded these accounts receivable for $19,666.11 (Ex. D), $51,824 (Ex. E), $52,332

1   (Ex. I), $26,020 (Ex. J), and $41,960 (Ex. K), for a total funded amount of $191,802.11.  (Id.

2   ¶¶ 10-11.)

3          The $22,458.66 total customer repayments that plaintiff received was for Exhibit D's

4   accounts receivable.  (Id. ¶ 14.)  Thus, as of the filing of the complaint (about a year after

5   receiving the second of the two payments), the total funded amount left unpaid on the amount

6   funded for RG Group's accounts receivable was **$169,343.45** ($191,802.11 - $22,458.66).

7   Plaintiff neglects to subtract the $22,458.66 from the funded amount in calculating its damages

8   from RG Group (see ECF No. 54.1 at 14, calculating total based on daily fees plus $191,802.11),

9   opting to instead subtract the $22,458.66 solely from the factoring fees owed on the Purchase

10  Agreement for which that payment was received (Exhibit D).  As discussed next, that is not the

11  correct way to apply the $22,458.66 payment.

12             i.   Factoring Fees Owed by RG Group as of Complaint Filing

13         Turning to the factoring fees accrued on RG Group's accounts receivable, the following

14  table (excerpted from the one provided in Mr. Johnson's affidavit) is helpful to understand

15  plaintiff's calculation of the fees it believes accumulated up to the filing of the complaint:

16

| Pre-Complaint Fees Requested | | | | |
|---|---|---|---|---|
| Purchase Agreement / Transaction | Date Signed / Funded | Gross Amount Receivable | Days from Funding to Complaint Filing | Factoring Fees Owed as of 12/28/2018 *Requested* |
| Ex. D | 12/27/2016 | $24,582.64 | 720 | *($34,602.52 - $22,458.66) =* $12,143.86 |
| Ex. E | 11/22/2016 | $64,780.00 | 766 | $97,009.99 |
| Ex. I | 02/15/2017 | $65,415.00 | 680 | $86,962.70 |
| Ex. J | 12/23/2016 | $32,525.00 | 735 | $46,735.99 |
| Ex. K | 12/27/2016 | $52,450.00 | 730 | $74,854.02 |
| | | | **Total** | **$317,706.56** |

(See Johnson Aff. ¶ 17.)

26         The same factoring rate of 0.001955 per day applied to both PDI and RG Group's

27  Purchase Agreements.  Because no payments were received on the Purchase Agreements

28

contained in Exhibits E, I, J, or K, the factoring fees owed on those Purchase Agreements at the time of the complaint's filing are simply the Gross AR x 0.001955 x the Number of Days.  The court agrees with plaintiff's calculation of the pre-complaint fees accrued under those Purchase Agreements, reflected in the above table.

For the Exhibit D Purchase Agreement, plaintiff calculates the fees by starting with the same formula ($24,582.64 x 0.001955 x 720 = $34,602.52) and then subtracting the $22,458.66 in payments received for the Exhibit D accounts receivable, to arrive at a net total of $12,143.86 in fees.  (Johnson Aff. ¶ 17 n.6.)  This approach does not accurately reflect how the $22,458.66 received in 2017 operates under the terms of the factoring agreement as alleged by plaintiff.

Because the factoring arrangement was not written down, all the court has to go on is the allegation in the complaint that the daily factoring fees were to be "calculated at an agreed rate of 0.00196% of the <u>outstanding</u> gross accounts receivable."  (Complaint ¶ 20 (emphasis added).) The court's best interpretation of this allegation is that the $22,458.66—received in two separate payments, $2,245.86 directly from the customer in "February 2017," and $20,212.80 in customer payments remitted from RG Group in "November 2017" (Johnson Aff. ¶ 14)—should be applied against the accrual of fees on the Exhibit D receivables <u>from the moment they were received</u>, because they immediately reduced the amount "outstanding" on the gross accounts receivable for that Purchase Agreement.  In the court's view, the proper formula to apply is:

[Gross AR – (any payment received)] x 0.001955 x [days outstanding]

Plaintiff's formula, by contrast is:

[Gross AR x 0.001955 x days outstanding] – [any payment received]

It makes a big difference, mathematically speaking, where in the equation the subtraction occurs. Under plaintiff's formula, fees supposedly accrued unabated for Exhibit D's accounts receivable from their funding through the filing of the complaint.  The Gross AR under Exhibit D was $24,582.64.  Plaintiff purchased/funded the Exhibit D receivables on December 27, 2016, which was 720 days before the complaint's filing.  (Johnson Aff. ¶ 17 & Ex. D.)  Therefore, plaintiff calculates that $34,602.52 in factoring fees had accrued for Exhibit D by the complaint's filing date, from which $22,458.66 should be subtracted in acknowledgment of the payments received.

13

1  (Id. ¶ 17 n.6.)

2          That is, plaintiff's formula treats the $22,458.66 received as if it were paying down the

3  $34,602.52 in factoring fees that had accrued for Exhibit D by the complaint's filing date.  In

4  reality, the $22,458.66 received should be treated as repayment of the total funded amount (for all

5  Purchase Agreements), and each portion of that repayment—the $2,245.86 received in February

6  2017 and the $20,212.80 received in November 2017—should also be applied as of the time of

7  receipt to incrementally decrease the amount of the Gross AR "outstanding" on the Exhibit D

8  receivables, for purposes of calculating the factoring fees owed.

9          The undersigned recommends calculating the fees owed on the Exhibit D receivables as

10  follows, assuming that (at the latest) the above payments were received on February 28, 2017,

11  and November 30, 2017:

12  • $24,582.64 Gross AR x 0.001955 x 63 days (from funding on 12/27/16 to receipt of first

13          payment on 2/28/17) = **$3,027.72** in fees from funding to 2/28/17

14  • [$24,582.64 Gross AR - $2,245.86 total repaid = $22,336.78] x 0.001955 x 275 days

15          (from payment on 2/28/17 to second payment on 11/30/17) = **$12,008.81** in fees from

16          2/28/17 to 11/30/17

17  • [$24,582.64 Gross AR - $22,458.66 total repaid = $2,123.98] x 0.001955 x 393 days

18          (from second payment on 11/30/17 to 12/28/18 complaint filing) = **$1,631.89** in fees from

19          11/30/17 to complaint filing

20  Thus, the fees owed on Exhibit D's receivables as of the complaint's filing were **$16,668.42**

21  ($3,027.72 + $12,008.81 + $1,631.89).[5]  Accordingly, the undersigned recommends awarding

22  $322,231.12 in pre-complaint factoring fees against RG Group, as shown here:

23  ─────────────────────

24  [5]  This is significantly lower than the $34,602.52 in Exhibit D fees that plaintiff calculated (before subtracting $22,458.66).  Of course, subtracting $22,458.66 from $34,602.52 results in plaintiff

25  actually requesting a lower amount of fees from Exhibit D:  $12,143.86.  (Johnson Aff. ¶ 17 n.6.) However, as seen below, the court's recommended corrections to the damages calculations

26  overall will result in a lower amount of total damages being awarded against RG Group, ultimately.  This is because, as mentioned before, the court recommends also deducting the

27  $22,458.66 received from the amount owed in repayment of the total funded amount, whereas plaintiff only deducts the $22,458.66 from the factoring fees owed—without also using those

28  payments to reduce the amount of fees accumulated.

14

| Pre-Complaint Fees Recommended |
|---|
| *$16,668.42* |
| $97,009.99 |
| $86,962.70 |
| $46,735.99 |
| $74,854.02 |
| **TOTAL   $322,231.12** |

      ii.  <u>Factoring Fees Owed by RG Group from Complaint Filing to Johnson Affidavit</u>

Finally, the court turns to the fees owed on the outstanding RG Group gross receivables from the complaint's filing to the date of Mr. Johnson's affidavit.[6]  This segment is easier to calculate because (1) the same number of days (1,203) passed for all five Purchase Agreements with no more payments received after the complaint was filed; and (2) for the post-complaint period, plaintiff correctly accounts for the $22,458.66 previously received in determining the continuing daily accrual rate.

As reflected in the briefing, the fees from RG Group's <u>outstanding</u> receivables continued to accrue, post-complaint, at a rate of $424.81 per day.  (Johnson Aff. ¶ 21.)  This rate is based on the total original Gross AR on RG Group's Purchase Agreements ($239,752.64), minus the $22,458.66 received, to arrive at the total <u>outstanding</u> Gross AR of $217,293.98 as of the complaint's filing on December 28, 2018.  Multiplying $217,293.98 by the daily factoring rate of 0.001955 yields the daily accrual rate of $424.81 (with rounding to the nearest cent).  Accordingly, from the date of the complaint's filing to the date of Mr. Johnson's affidavit, the total fees amassed due to lack of payment on RG Group's receivables were $511,046.43 ($424.81 per day x 1203 days).

///

///

---

[6]  Again, as with the PDI receivables, plaintiff seeks damages only through the date of Mr. Johnson's latest affidavit, April 14, 2022 (<u>see</u> ECF No. 54.1 at 14, calculating damages as of date of Johnson Affidavit; ECF No. 54.4, proposing flat dollar amounts of compensatory damages, not a continuing rate).

iii.  Total Damages Allocated to RG Group

Thus, the total fees amassed (both pre- and post-complaint) due to lack of payment on RG Group's receivables as of the filing of Mr. Johnson's affidavit is $833,277.55 ($322,231.12 pre-complaint + $511,046.43 post-complaint).

Returning to the amount owed as repayment of the original total funded amount, the amount left unpaid on RG Group's accounts receivable remains $169,343.45 ($191,802.11 - $22,458.66).  As mentioned at the outset, plaintiff neglects to subtract the $22,458.66 when calculating its damages from RG Group's breaches, but in the sections of the brief and the Johnson Affidavit regarding prejudgment interest plaintiff acknowledges this $169,343.45 is the amount of the funding repayment "due and owing to Plaintiff as of the filing of the Complaint." (ECF No. 54.1 at 15; Johnson Aff. ¶ 25(b).)

Therefore, the total damages incurred for RG Group's breaches of contract, therefore is **$1,002,621.00** ($833,277.55 in factoring fees + the $169,343.45 outstanding on RG Group's total funded amount).[7]  The court should enter judgment in that amount of <u>additional</u> damages against defendant RG Group, which is solely liable for its own breaches of contract.

2.  Prejudgment Interest

Although plaintiff does not request continuing accrual of its factoring fee damages beyond the date of the Johnson Affidavit, plaintiff does request an award of prejudgment interest from the filing of the complaint, through the Johnson Affidavit, and continuing through the date of entry of judgment.  (See ECF No. 54.1 at 15.)

To repeat from the previous findings and recommendations (ECF No. 51 at 26), prejudgment interest "serves to compensate [the prevailing wronged party] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." Schneider v. County of San Diego, 285 F.3d 784, 789 (9th Cir. 2002) (internal quotation omitted). Prejudgment interest is a substantive part of a plaintiff's claim, and state law generally governs

---

[7]  As noted above, this is less than the $1,020,555.10 in total additional damages that plaintiff requests be awarded against RG Group.  (See ECF No. 54.1 at 14.)

1    the award of prejudgment interest in diversity actions.  Oak Harbor Freight Lines, Inc. v. Sears

2    Roebuck & Co., 513 F.3d 949, 961 (9th Cir. 2008).  "When a contract includes a valid choice of

3    law provision, the court applies the law of the chosen state to find the appropriate prejudgment

4    interest."  Phillips 66 Co. v. Petros Rai Stations, LLC, 2016 U.S. Dist. LEXIS 56325, at *21-23

5    (E.D. Cal. April 26, 2016); see also In re FKF 3, LLC, 2018 U.S. Dist. LEXIS 183087, at *40-41

6    (S.D.N.Y Oct. 24, 2018) ("[W]here prejudgment interest can only be awarded on the basis of

7    what is solely a state claim, it is appropriate to use the state interest rate.").

8        Here, the Terms and Conditions governing the individual Purchase Agreements provide

9    that the agreement would be "governed by and construed in accordance with the substantive laws

10   of the state of [plaintiff]'s principal place of business."  (Johnson Aff., Ex. A (Section 15).)

11   Plaintiff's principal place of business is in Sacramento, California (Complaint ¶ 1), so California

12   law governs the calculation of prejudgment interest.  Under California law, "[i]f a contract . . .

13   does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent

14   per annum after a breach."  Cal. Civ. Code § 3289(b).  The Terms and Conditions do not specify

15   any particular rate of interest, instead providing that plaintiff would "comply with the applicable

16   law governing the maximum rate permissible by law."  (Johnson Aff., Ex. A (Section 13(a)).)

17   Thus, plaintiff is entitled to the applicable prejudgment interest rate of 10%.

18        In response to the previous findings and recommendations, plaintiff's renewed motion

19   allocates the amount of prejudgment interest arising from the damages from PDI's breaches,

20   versus that arising from the damages for RG Group's breaches.  (ECF No. 54.1 at 14-15; see ECF

21   No. 51 at 26-27.)

22                 *a.  Prejudgment Interest on Damages from PDI's Breaches*

23        Plaintiff correctly calculates that prejudgment interest on the damages caused by PDI

24   accrues from the filing of the complaint at a rate of $105.76 per day.  (ECF No. 54.1 at 15.)  To

25   arrive at this daily accrual rate, the court first determines the total amount due and owing on the

26   date of the complaint's filing.  For PDI's Purchase Agreements, this amount was $386,039.23

27   (the $131,400 unpaid on the original total funded amount, plus the $254,639.23 in pre-complaint

28   factoring fees).  At the 10% statutory annual interest rate, interest accrued on that amount at

                                         17

$38,603.92 per year (10% of $386,039.23).  This converts to the requested daily rate of $105.76 per day ($38,603.92 / 365 days, rounded to the nearest cent).

As discussed above, 1,203 days elapsed between the complaint's filing and the date of the latest Johnson Affidavit.  Therefore, as of the date of the Johnson Affidavit, the prejudgment interest owed on PDI's damages for breach was **$127,229.28** ($105.76 per day x 1,203 days).

Prejudgment interest continued to accrue beyond the April 14, 2022 date of Mr. Johnson's Affidavit as well, and it will continue to accrue beyond the date of the filing of these findings and recommendations—up until the date when final judgment is entered.  The undersigned cannot predict on what date final judgment will be entered because it is contingent on the assigned district judge adopting these findings and recommendations (or modifying them, as he sees fit).  Accordingly, the undersigned simply recommends awarding—in addition to the $127,229.28 interest accrued up to April 14, 2022—continuing interest at **$105.76 per day** for every day therefrom until the entry of final judgment.  This prejudgment interest should be awarded against all four defendants, jointly and severally, given that all four defendants are liable for PDI's breaches of contract.

*b.  Prejudgment Interest on Damages from RG Group's Breaches*

As to RG Group's breaches, plaintiff uses the correct formulas to calculate the prejudgment interest owed, but the dollar amounts reached are rendered incorrect by the above corrections to the damages actually incurred due to RG Group's breaches.

To determine the correct daily accrual rate, the court first determines the total amount due and owing on RG Group's Purchase Agreements on the date of the complaint's filing.  In keeping with the figures found above, this amount was $491,574.57 (the $169,343.45 unpaid balance of the original total funded amount, plus the $322,231.12 in pre-complaint factoring fees).  At the 10% statutory annual interest rate, interest accrued on that amount at $49,157.46 per year (10% of $491,574.57, rounding to the nearest cent).  This converts to a daily rate of $134.68 per day ($49,157.46 / 365 days, rounded to the nearest cent).

Therefore, as of the date of the Johnson Affidavit, the prejudgment interest owed on RG Group's damages for breach was **$162,020.04** ($134.68 per day x 1,203 days).  As with the

interest on PDI's damages, prejudgment interest on RG Group's damages also continued and continues at the same rate of **$134.68 per day** from April 15, 2022 (the day after the Johnson Affidavit) until the entry of final judgment.  This prejudgment interest should be awarded against RG Group alone, given that RG Group is solely liable for its own breaches of contract.

>    3.  Comparing Damages in Complaint to Damages to be Awarded

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Philip Morris USA, 219 F.R.D. at 501 (Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default."

It is somewhat difficult in this case to determine whether the amount of damages being recommended exceeds the amount of damages pled in the complaint because (1) the complaint sought combined damages for both PDI's and RG Group's breaches of contract, and (2) the factoring fees and interest continued to accrue beyond the filing of the complaint.

However, the complaint specifically pleads this continuing accrual of the factoring fees as damages (see, e.g., ECF No. 1 at 8, praying for damages of flat amount, "together with daily fees in the amount of $748.48 from the date of the filing of this Complaint until all outstanding amounts are paid in full."); and it specifically demands interest on the total amount of damages, including future-accruing fees (see id., requesting "interest thereon at the maximum rate permitted by law").

Moreover, when each entity's awardable damages for funded amounts and daily fees as of the complaint's filing are combined, they total slightly less than what was demanded in the complaint.  The complaint demanded $893,174.08 for the unpaid funded amount and accrued factoring fees, plus continuing factoring fees at a rate of $748.48 per day going forward.  (See id.) The math underlying both of these dollar amounts turns out to be slightly off, but nevertheless their total—projected out to the date of the Johnson Affidavit—exceeds that which the undersigned now recommends based on the above analyses.  $748.48 times 1,203 days comes to $900,421.44 in additional factoring fees (combined across PDI and RG Group) up to the Johnson Affidavit.  Thus, the complaint effectively demanded a projected total of $1,793,595.52 ($893,174.08 + $900,421.44) in damages as of April 14, 2022 (the date of the Johnson Affidavit).

1   By comparison, here the undersigned is recommending a combined award of $1,774,955.56 in

2   damages, exclusive of prejudgment interest.  Meanwhile, the complaint's demand for

3   prejudgment interest at the maximum allowable rate permits an award of the full prejudgment

4   interest calculated above.

5        Accordingly, there is no need to reduce the damages or interest to be awarded based on

6   the original amounts demanded in the complaint.

7           4.   Attorney's Fees and Costs

8        Finally, with its renewed motion plaintiff also brings its anticipated request for attorney's

9   fees and costs.  Plaintiff requests attorney's fees of $45,603.50 and costs of $2,816.10 incurred

10  over the course of this 3.5-year litigation.  (ECF No. 54.1 at 17; ECF No. 54.3 ("Powell Decl.").)

11       Under California law, reasonable attorney's fees and costs are available to the prevailing

12  party in a contract action if the contract specifically provides for such an award. Cal. Civ. Code

13  § 1717.   As noted in the previous findings and recommendations, Section 9 of the Terms and

14  Conditions provides that, if a collection agency or attorney was engaged to enforce the

15  agreement, the seller would "pay all [of plaintiff's] expenses, including corresponding fees,

16  expenses and other costs, together with the maximum interest allowed by law applied to such

17  amounts." (Johnson Aff., Ex. A (Section 9(a)(iii)).)  Likewise, both Gehm III's Personal

18  Guaranty and RG Group's Corporate Guaranty contain an agreement "to pay reasonable

19  attorney's fees and all other costs and expenses [Quantum] incur[red] in enforcing or otherwise in

20  any way arising out of this Guaranty." (Id., Ex. B (Personal Guaranty) (Section V); id. Ex. C

21  (Corporate Guaranty) (Section V).)  Therefore, attorney's fees and costs may be awarded against

22  these three defendants.  The fourth defendant, Gehm Jr., is also liable for attorney's fees and costs

23  due to his personal liability for causes of action against his since-dissolved company, PDI—

24  although that liability is limited by Cal. Corp. Code § 2011.

25       Beginning first with the litigation costs, plaintiff seeks $2,816.10 in costs for filing fees

26  and service of process costs—including the cost of service by publication as authorized by the

27  court early in this action.  (Powell Decl. ¶ 16; Johnson Aff., Ex. N.)  The invoices and receipts

28  attached to the motion substantiate that these are recoverable costs, and the undersigned finds

1  them reasonable.  Accordingly, the court should award **$2,816.10** in litigation costs, for which all

2  defendants are jointly and severally liable.

3      Plaintiff also requests $45,603.50 in attorney's fees for the 211.5 hours billed by multiple

4  attorneys and staff at plaintiff's counsel's firm.  (Powell Decl. ¶ 14.)

5      Courts determine the reasonableness of attorney's fee awards using the lodestar method,

6  where the "lodestar" amount is the sum of the number of hours reasonably expended on the

7  matter multiplied by a reasonable hourly rate.  Ferland v. Conrad Credit Corp., 244 F.3d 1145,

8  1146–48 (9th Cir. 2001).  The party seeking attorney's fees bears the burden of producing

9  sufficient evidence that "the requested rates are in line with those prevailing in the community for

10 similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v.

11 Stenson, 465 U.S. 886, 895 n.11 (1984); see Pasternack v. McCullough, 65 Cal. App. 5th 1050,

12 1055 (2d Dist. 2021) ("To determine the reasonable hourly rate, courts consider the rate

13 prevailing in the community for similar work.").

14     Based on review of the attached billing statements, and based on the undersigned's

15 knowledge of this litigation over the last three-and-a-half years, the court finds the 211.5 hours

16 expended to be reasonable.

17     Plaintiff requests the following effective hourly rates for counsel's services[8]:  $342.74 per

18 hour for lead counsel and partner Jaclyn Powell, who has practiced for about 13 years; $315 per

19 hour for partner C. Jason Smith who has practiced for about 17 years[9]; $281.76 per hour for

20 associate Brandon Wright, who has practiced for about 9 years; $144.39 per hour for associate

21 Brittany Wong has practiced for about 3 years; $53.57 per hour for paralegal Sharlyn Davis; and

22 $54.31 per hour for legal assistant Danielle Horn.  (Powell Decl. ¶¶ 5, 14.)

23

24 [8]  The undersigned uses the term "effective" hourly rates because counsel's firm charges variable
   hourly rates for different tasks and because counsel deducted significant hours below the amount
25 of time actually spent on this case.  The effective hourly rates were determined based on the
   summary chart of time and expense shown in Paragraph 14 of the Powell Declaration.
26

27 [9]  Counsel does not provide information about the years of experience or practice areas of any
   attorneys other than Ms. Powell; however, the undersigned takes judicial notice of the year of
28 admission listed for each of the other attorneys on their respective California Bar web profiles.

1       While counsel does not provide comparative prevailing rates for work in this district,

2  these rates are easily found reasonable as they are below the rates generally awarded for similarly

3  situated professionals in this district.  A 2019 analysis of attorney's fees in this district found

4  reasonable hourly rates of $400 for partners with between 10 and 20 years of experience.

5  Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr., 2019 WL 2725336, at *8 (E.D. Cal.

6  June 28, 2019).  A more recent breach of contract case proceeding before the district judge

7  assigned to this case approved hourly rates of $330 per hour for the experienced lead associate,

8  see Price Simms Holdings, LLC v. Candle3, LLC, No. 2:18-CV-1851-WBS-KJN, 2021 WL

9  1884995, at *2 (E.D. Cal. May 11, 2021), report and recommendation adopted, 2021 WL

10  2016915 (E.D. Cal. May 20, 2021), while hourly rates of $175 are found appropriate for attorneys

11  with less than five years of experience, see Freshko Produce Servs., Inc. v. Write On Mktg., Inc.,

12  2019 WL 3798491, at *3 (E.D. Cal. Aug. 13, 2019), report and recommendation adopted, 2019

13  WL 5390563 (E.D. Cal. Oct. 22, 2019).  Finally, the rates requested for the paralegal and legal

14  assistant are well under the $75 per hour generally found appropriate in this district.  See

15  Deocampo v. Potts, No. 2:06-1283-WBS, 2014 WL 788429, at *9 (E.D. Cal. Feb. 25, 2014).

16       Therefore, the court should award in full the requested attorney's fees of **$45,603.50** and

17  costs of **$2,816.10**.  As found in the previous findings and recommendations, all four defendants

18  should be held jointly and severally liable for these attorney's fees and costs.  (ECF No. 51 at 27

19  & n.13.)

20  **RECOMMENDATIONS**

21       For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

22  1.  Plaintiff's renewed motion for default judgment (ECF No. 54) be GRANTED;

23  2.  Plaintiff's motion for partial voluntary dismissal (ECF No. 57) be GRANTED and the

24     Fifth and Sixth Causes of Action in the complaint be DISMISSED in their entirety,

25     without prejudice;

26  ///

27  ///

28  ///

22

3.  Judgment on all remaining causes of action in the Complaint be entered in favor of plaintiff and against defendants PDI Group, Inc.; RG Group, LLC; John F. Gehm, Jr.; and John F. Gehm, III;

4.  Compensatory damages be awarded against all defendants, jointly and severally, in the amount of **$772,334.56**;

5.  Additional compensatory damages be awarded against RG Group, LLC, in the amount of **$1,002,621.00**;

6.  Prejudgment interest be awarded against all defendants, jointly and severally, in the amount of **$127,229.28** and continuing at a rate of **$105.76** per day from April 15, 2022 until the date of entry of judgment;

7.  Additional prejudgment interest be awarded against RG Group, LLC, in the amount of **$162,020.04** and continuing at a rate of **$134.68** per day from April 15, 2022 until the date of entry of judgment;

8.  Plaintiff be awarded attorneys' fees against all defendants, jointly and severally, in the amount of **$45,603.50**;

9.  Plaintiff be awarded costs against all defendants, jointly and severally, in the amount of **$2,816.10**;

10. All cross claims asserted by defendants RG Group and John Gehm III against cross-defendants PDI Group and/or John Gehm, Jr., be DISMISSED with prejudice for failure to prosecute under Fed. R. Civ P. 41(b)[10]; and

11. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

///

---

[10] Should any defendants wish to object to the with-prejudice dismissal of these cross claims, they may do so within the period for objections to these findings and recommendations.

23

1  Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

2  on all parties and filed with the court within seven (7) days after service of the objections.  The

3  parties are advised that failure to file objections within the specified time may waive the right to

4  appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez

5  v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

7  ## **ORDER**

8  IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order

9  and findings and recommendations on defendants by U.S. mail at their last-known address(es).

10  Dated:  July 26, 2022

12  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

   quan.3279

24